## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**DONNA F.,[1]**

      **Plaintiff,**

                                       **Case No. 2:22-cv-2503**

    **v.**                                      **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Donna F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

      On July 6, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since December 7, 2018. R. 64, 75, 140–41.[3] The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] The SSA awarded benefits to Plaintiff in connection with a second application filed by her, finding her disabled as of January 1, 2021, *i.e.*, the day after the ALJ issued the decision at issue

1

upon reconsideration. R. 87–96. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 97–98. ALJ Gina Pesaresi held a hearing on November 12, 2020, at which Plaintiff, who was represented by counsel as well as a non-attorney representative, testified, as did a vocational expert. R. 20, 38–63. In a decision dated December 31, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 7, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 20–33. That decision became final when the Appeals Council declined review on March 15, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 20, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 6.[4] On June 21, 2022, the case was reassigned to the undersigned. ECF No. 7. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

---

in this case. *See* Exhibit 1, attached to *Plaintiff's Reply Brief*, ECF No. 23; *Plaintiff's Notice of Supplemental Authority*, ECF No. 24. As Plaintiff concedes, the "period at issue before this Court is from Plaintiff's alleged onset date of December 7, 2018, until December 31, 2020." *Plaintiff's Notice of Supplemental Authority*, ECF No. 24, p. 1.

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous
period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December
31, 2023. R. 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful
activity between December 7, 2018, her alleged disability onset date, and the date of the
decision. R. 23.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:
coronary artery disease status post stent placement; degenerative disc disease of the cervical and
lumbar spine with radiculopathy; plantar fasciitis; bunion; tendinopathy and tears of the
supraspinatus and infraspinatus of the left shoulder, with residuals status post rotator cuff repair;
arthritis; residuals from resection of osteochondroma of the fifth metatarsal of the right foot; and
obesity. R. 23.  The ALJ also found that gastroesophageal reflux disease ("GERD"), anxiety
disorder, depressive disorder, and sleep apnea were not severe impairments. R. 23–25.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of
impairments that met or medically equaled the severity of any Listing. R. 25–27.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject
to various additional limitations. R. 27–33. The ALJ also found that this RFC permitted the
performance of Plaintiff's past relevant work as an office worker. R. 32–33. The ALJ therefore
concluded that Plaintiff was not disabled within the meaning of the Social Security Act from
December 7, 2018, her alleged disability onset date, through the date of the ALJ's decision. R.
33.

Plaintiff disagrees with the ALJ's findings at step 4 and also contends that the case should

be remanded for consideration of new and material evidence. *Plaintiff's Memorandum of Law,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20. The Commissioner also disagrees with Plaintiff's request for remand under sentence six of 42 U.S.C. § 405(g).

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

Arden Fusman[5] conducted an initial review of Plaintiff's medical record on behalf of the state agency on January 14, 2020. R. 65–74. According to Dr. Fusman, Plaintiff could occasionally (one-third or less of an eight-hour day) lift and/or carry 20 pounds and frequently (more than one-third up to two-thirds of an eight-hour day) lift and carry 10 pounds, could stand and/or walk about 6 hours in an eight-hour day, and could sit for about 6 hours in an eight-hour day. R. 70–71. Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders/ropes/scaffolds. R. 71. Plaintiff was limited in her ability to reach to the left in front and/or laterally and left overhead. *Id*. Asked to explain Plaintiff's manipulative limitations and how the evidence supports his opinions in this regard, Dr. Fusman responded, "LUE occasional[.]" R. 72. He denied that Plaintiff had visual or communicative limitations, but opined that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity; moderate exposure to fumes, odors, dusts, gases, poor

---

[5] Dr. Fusman's credentials do not appear in the record; however, the ALJ referred to this consultant as "Arden Fusman, M.D." R. 31. The Court will therefore also refer to this consultant as "Dr. Fusman."

ventilation, etc.; and all exposure to hazards; but she had no limitation in connection with noise and vibration. *Id*. Dr. Fusman stated further under the heading, "RFC – Additional Explanation," as follows:

> 54 yo female alleges RTC surgery, cardiac disease, back pain,
> 1. s/p removal osteochondroma plantar aspect right 5th toe May 2019, per note of 6/24/19;
> 2. left shoulder pain per note of 8/15/19-complete RTC tear of left shoulder, s/p left shoulder arthroscopic repair, decreased rom, should not be causing this much pain especially after 8 months of PT - refer to pain management.
> 3. cardiac - s/p drug eluding stent 6/11/18
> ADLs she is independent in her self care, she can prepare meals and do housework, she can drive and shop and walk a few blocks,
> EOD 8/15/19

R. 72–73. According to Dr. Fusman, Plaintiff could perform her past relevant work as it was actually performed and was not disabled. R. 73.

Arthur Pirone, M.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on May 29, 2020. R. 76–81. Dr. Pirone agreed with Dr. Fusman that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, could stand/walk for about 6 hours, and could sit for about 6 hours in an eight-hour workday. R. 79. However, unlike Dr. Fusman, Dr. Pirone opined that Plaintiff had no postural, visual, communicative, or environmental limitations. R. 79–80. Plaintiff's only manipulative limitation was a limitation to only occasionally reaching overhead with her left upper extremity. R. 79. Like Dr. Fusman, Dr. Pirone concluded that Plaintiff could perform her past relevant work as it was actually performed and that she was therefore not disabled. R. 80.

## V.      DISCUSSION

### A.      RFC and Opinion Evidence

Plaintiff contends that substantial evidence does not support the RFC because the ALJ erred in considering Dr. Fusman's opinion regarding Plaintiff's ability to reach. *Plaintiff's Brief*,

ECF No. 17, pp. 11–19; *Plaintiff's Reply Brief*, ECF No. 23, pp. 1–7. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency Dr.s—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can never climb ladders, ropes or scaffolds, can occasionally climb ramps or stairs, occasionally stoop, crouch, kneel and balance, never crawl, can occasionally reach overhead and frequently reach in all directions with the left upper extremity.

R. 27. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's history of cardiac procedures in May and June 2018 and subsequent stabilization

of her cardiovascular status later in 2018 and in 2019; Plaintiff's medical records that reflected

no additional cardiac treatment until May 2020; a September 2020 myocardial infarction and

cardiac catheterization that revealed 100% stenosis in the right coronary artery, for which

Plaintiff underwent a stenting procedure; and Plaintiff's denial later that month of chest pain or

shortness of breath. R. 28. As for her musculoskeletal impairments, the ALJ also considered

Plaintiff's history of right foot pain; February 2019 examination findings that, despite Plaintiff's

complaints of right foot pain, she ambulated with a non-antalgic gait, had equal and normal

muscle power, normal deep tendon reflexes, and intact sensation, and was fully weightbearing;

evidence that, in June 2019 and following continuing complaints of right foot pain, Plaintiff

underwent resection of an osteochondroma/hypertrophic bone from the plantar aspect of the 5th

metatarsal of her right foot, and removal of two screws from her right foot; reports of only

minimal pain postoperatively with only minimal pain to palpation at the surgical site, and, later

the same month, Plaintiff reported that she was feeling "great," had only minimal pain, was

ambulating comfortably with sneakers and with a non-antalgic gait, and could gradually begin

normal activity as tolerated; a finding in August 2019 by Gregory Pinkowsky, M.D., that

Plaintiff had a normal gait; evidence that Plaintiff sought no further treatment of her foot

impairment until July 2020, when she reported that she had numbness and tingling in her feet,

although no abnormalities were documented upon exam; findings that Plaintiff had normal motor

strength in her lower extremities, and had no focal neurologic deficits; an October 2020 MRI of

Plaintiff's lumbar spine that revealed minimal disc protrusion at T11-T12; small disc herniation

at L1-L2; minimal disc bulge at L2-L3 with mild right foraminal stenosis; disc degeneration at

L3-L4 with minimal disc bulge and mild left foraminal stenosis; minimal disc bulge at L4-L5

with moderate right foraminal stenosis and mild central stenosis; no evidence that Plaintiff

11

required any type of assistive device to ambulate; and no evidence of significant spinal stenosis, positive straight leg raising, nerve root impingement, sensory or reflex loss, or decreased strength in her lower extremities. R. 28–29. As for Plaintiff's left shoulder and neck impairments, the ALJ considered that Plaintiff reported in October 2018 that she had experienced pain in her left shoulder for the prior six months; evidence that, in December 2018, Plaintiff underwent surgical repair of a torn left rotator cuff; that she reported to Dr. Pinkowsky in January 2019 that, overall, she had been doing well, that her pain was controlled, and she was doing well in physical therapy; Dr. Pinkowsky's finding on examination that Plaintiff had intact sensation, and recommendation that Plaintiff could discontinue her use of a sling and should continue physical therapy; Plaintiff report to Dr. Pinkowsky in March 2019 that she was doing well and her pain was controlled; Dr. Pinkowsky's findings upon examination that Plaintiff had 4+/5 strength in her left shoulder and intact sensation; Plaintiff's report in April 2019 that she had been doing well until a physical therapist stretched her left arm too quickly, following which she had been experiencing pain; Dr. Pinkowsky's findings upon examination that, despite this setback, Plaintiff had very good strength and good range of motion; Plaintiff's report in May 2019 that her pain was controlled and that, overall, she was doing well; examination revealed 5/5 strength and intact sensation; Dr. Pinkowsky's findings in June 2019 that Plaintiff had regained full range of motion in her left shoulder; Plaintiff's complaint to Dr. Pinkowsky in August 2019 that she had recently experienced sharp pain in her left shoulder that had radiated down her arm; Dr. Pinkowsky's examination findings that Plaintiff had 5/5 strength, and intact sensation, but had limited flexion and extension in her cervical spine; an August 2019 MRI of Plaintiff's left shoulder that revealed moderate tendinopathy of the supraspinatus and infraspinatus, and a small to moderate partial thickness tear of the infraspinatus with an associated small near full thickness

12

tear; an MRI of Plaintiff's cervical spine performed that same day that revealed minimal disc

bulge at C2-C3 and C7-T1, mild disc degeneration at C3-C4 through C6-C7, and facet

arthropathy at C7-T1, but no significant central canal stenosis or foraminal stenosis at any level;

evidence that Plaintiff underwent a cortisone injection in her left shoulder in September 2019;

the October 2019 findings of intact sensation and 5/5 strength; evidence that, despite Plaintiff's

complaint of pain in her left shoulder, she sought no treatment for her neck or shoulder

impairments after October 2019 until July 2020; evidence that, in July 2020, Plaintiff presented

to Galdi Balazs, M.D., complaining of pain in her left shoulder with occasional tingling in her

fingers; Dr. Balazs' examination findings that Plaintiff had tenderness to palpation in her left

shoulder, 4/5 strength to forward elevation and external rotation, and 5/5 strength to internal

rotation; an August 2020 MRI of Plaintiff's left shoulder that revealed a tear of the supraspinatus

tendon and examination findings that revealed normal motor strength in her upper extremities

with no focal neurologic deficits. R. 29–30 (stating further that there is no evidence Plaintiff

"lacks the ability to perform fine or gross movements with her upper extremities. Treatment

notes since her most recent shoulder surgery show *normal range of motion* and muscle strength,

and no sensory or reflex loss" and noting that Plaintiff's "treatment since her surgery has been

conservative, with large gaps in the record with no evidence of any treatment") (emphasis

added). The ALJ also expressly considered Plaintiff's obesity, which the ALJ factored into

Plaintiff's RFC. R. 30–31.

> The ALJ went on to explain her reasoning for the RFC determination, as follows:
>
> The record reflects that the claimant has performed a generally normal range of functional abilities, which is inconsistent with a finding of disability. Although the claimant testified at her hearing that her impairments severely restricted h[er] functional ability, the claimant indicated on an Adult Function Report that she can prepare simple meals, wash laundry, can drive a car, and shops in stores for groceries (Exhibit B-4E). The claimant did not testify that her alleged mental

impairments cause any limitations in her ability to perform her activities of daily living.

Finally, the medical record as a whole supports a conclusion that the claimant can perform sedentary work with acknowledged limitations. The undersigned considered the claimant's obesity, coronary artery disease, arthritis, cervical and lumber degenerative disc disease, left shoulder impairment, and right foot impairments in assigning a sedentary residual functional capacity. A limitation that the claimant can never climb ladders, ropes or scaffolds, can occasionally climb ramps or stairs, occasionally stoop, crouch, kneel and balance, never crawl, was assigned to consider the claimant's obesity, coronary artery disease, arthritis, cervical and lumber degenerative disc disease, left shoulder impairment, and right foot impairments. A limitation that the claimant can occasionally reach overhead, and frequently reach in all directions with the left upper extremity was assigned to consider the claimant's left shoulder impairment and cervical degenerative disc disease.

R. 31. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186

F.3d at 429.

Plaintiff, however, argues that the ALJ erred in her consideration of Dr. Fusman's

opinion, leading to a flawed RFC determination. *Plaintiff's Brief*, ECF No. 17, pp. 11–19;

*Plaintiff's Reply Brief*, ECF No. 23, pp. 1–7. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,*

186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d at

42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a

case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence

14

in the record consistent with his responsibilities under the regulations and case law."). Without

this explanation, "the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing

*Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the Commissioner's regulations eliminated the

hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20

C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner

will no longer "defer or give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s), including those from [the

claimant's] medical sources"). Instead, the Commissioner will consider the following factors

when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with

the claimant, including the length of the treating examination, the frequency of examinations,

and the purpose of the treatment relationship; (4) the medical source's specialization; and (5)

other factors, including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability program's policies and

evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and

Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and

consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

factor, the regulation provides that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

---

[6] As previously noted, Plaintiff's claim was filed on July 6, 2019.

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the

consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or

prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of

medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [she] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

In crafting the RFC determination at step four of the sequential evaluation, the ALJ in

this case found, *inter alia*, that Dr. Fusman's opinion was "partially persuasive[,]" reasoning as

follows:

> Arden Fusman, M.D., a State agency medical Dr., completed a Physical Residual
> Functional Capacity Assessment form on January 14, 2020 (Exhibit B-2A). Dr.
> Fusman opined that the claimant could lift and carry 20 pounds occasionally, 10
> pounds frequently, can stand and walk for 6 hours in an 8-hour workday, sit for 6
> hours in an 8-hour workday, with an unlimited ability to push and pull. Dr. Fusman
> opined further that the claimant can occasionally climb ramps and stairs, never
> climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and
> crawl, can occasionally reach overhead, in front and/or laterally with the left upper
> extremity, must avoid concentrated exposure to temperature extremes, wetness, and
> humidity, avoid even moderate exposure to fumes, odors, dusts, gases, and poor
> ventilation, and avoid all exposure to hazards. Dr. Fusman's opinion is found
> partially persuasive. Dr. Fusman's opinion that the claimant can lift and carry 20
> pounds occasionally, 10 pounds frequently, can stand and walk for 6 hours in an 8-
> hour workday, is inconsistent with subsequent treatment notes which support a
> finding that the claimant is more limited in these areas than he opined. Dr. Fusman's
> opinion that the claimant can sit for 6 hours, occasionally climb ramps and stairs,
> never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch,
> and crawl, can occasionally reach overhead, is persuasive, as it is consistent with
> Dr. Pinkowsky's treatment notes which indicate that the claimant had 5/5 strength,
> intact sensation, and had regained full range of motion in her left shoulder (Exhibit

16

B-5F/16). Dr. Fusman's opinion that the claimant must avoid concentrated exposure to temperature extremes, wetness, and humidity, avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, and avoid all exposure to hazards is not persuasive, as there are no treatment notes in the record which support assigning these environmental limitations. *Dr. Fusman's opinion that the claimant can occasionally reach in front and/or laterally with the left upper extremity is also unpersuasive as it is inconsistent with Dr. Pinkowsky's treatment notes which indicate that the claimant had 5/5 strength, intact sensation, and had regained full range of motion in her left shoulder (Exhibit B-5F/16). This part of Dr. Fusman's opinion is also inconsistent with Dr. Balazs' treatment notes which stated that the claimant had 4/5 strength in her left shoulder to forward elevation and external rotation and 5/5 strength to internal rotation* (Exhibit B-14F).

R. 31–32 (emphasis added). The Court finds no error with the ALJ's reasoning in this regard. *See* 20 C.F.R. § 404.1520c(c); *cf. Peters v. Saul*, No. 3:19-CV-01672, 2020 WL 6799927, at *8 (M.D. Pa. Nov. 19, 2020) (affirming denial of benefits where, *inter alia*, the ALJ supported the RFC limitations with objective medical evidence that revealed, among other things, "generally normal strength and ranges of motion with occasional restriction due to the pain that improved[;] routine and conservative care that included medication as well as injections that stabilized and improved her symptoms[; and an examination that] showed normal strength and mild decreases in range of motion despite her alleging extreme pain").

Plaintiff, however, contends that the ALJ selectively cited to the record evidence when discounting Dr. Fusman's opined shoulder limitations and that the records of Dr. Pinkowsky and Dr. Balazs support, and are consistent with, Dr. Fusman's opined reaching limitations. *Plaintiff's Brief*, ECF No. 17, pp. 15–19. The Court is not persuaded that these issues require remand.

In support of this argument, Plaintiff notes that, in May 2019, Dr. Pinkowsky "related that although [Plaintiff's] shoulder was doing well, her left clavicle and elbow were both painful." *Id*. at 16 (citing R. 494). However, and as the ALJ observed, R. 30 (noting that Plaintiff "admitted that her pain was controlled, and overall was going well"), Dr. Pinkowsky also expressly noted at that time that Plaintiff reported that "[o]verall she has been doing well. *Pain is*

*controlled*. She has been doing well with physical therapy. No pain in the shoulder." R. 494 (emphasis added). Plaintiff also concedes that the ALJ noted Dr. Pinkowsky's findings that Plaintiff had limited flexion and extension in her cervical spine and 5/5 strength and intact sensation. *Plaintiff's Brief*, ECF No. 17, p. 16 (citing R. 30); *see also Messina v. Comm'r of Soc. Sec.*, 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff also complains that her condition worsened in August 2019, with pain radiating down her left arm with possible cervical radiculopathy, decreased range of motion in her left arm, and a positive Spurling's test. *Plaintiff's Brief*, ECF No. 17, pp. 15–16 (citing R. 30, 488). She also points to "a partial medical source statement dated August 23, 2019" authored by Dr. Pinkowsky that reflected a small full-thickness tear of the infraspinatus and which mentioned cortisone injections, medication, and physical therapy. *Id*. at 16 (citing R. 478). Plaintiff further emphasizes that Dr. Pinkowsky "supplied a passive range of motion chart on which he placed Xs *apparently to indicate* a lack of left shoulder motion in the areas of forward elevation, abduction, and external rotation." *Id*. (citing R. 483) (emphasis added). However, any error in the ALJ's failure to expressly acknowledge this evidence is, at most, harmless. As an initial matter, Plaintiff implicitly concedes that Dr. Pinkowsky's findings on the passive range of motion chart are vague; this physician did not specify the extent to which Plaintiff's range of motion was limited. *See id*.; *see also* R. 483. Significantly, Dr. Pinkowsky did not identify in his August 2019 medical source statement—a document upon which Plaintiff relies—any limitation in her ability to perform work-related activities flowing from this impairment. R. 479. Additionally,

Plaintiff does not explain why the ALJ's RFC determination failed to accommodate any limitation related to this impairment. *See generally Plaintiff's Brief*, ECF No. 17, pp. 15–16; *see also Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). Accordingly, any error on the part of the ALJ in her failure to expressly consider this evidence, if indeed any such error actually occurred, does not require remand. *See Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *1 (3d Cir. June 15, 2023), *cert. denied sub nom. Pierznik v. O'Malley*, No. 23-6428, -- U.S. --, -- S.Ct. --, 2024 WL 899292 (U.S. Mar. 4, 2024) (concluding that substantial evidence supported the RFC determination and the ALJ's underlying decision to reject some medical opinions because they were "vague" and did not address the claimant's functional abilities in vocational terms); *Anderson v. Comm'r of Soc. Sec.*, No. 21-2009, 2022 WL 1635628, at *4 (3d Cir. May 24, 2022) (finding that, in discounting a medical opinion, the ALJ's explanation that the opinion "was vague and failed to identify 'any specific work related functional limitations" "suffices under the substantial-evidence standard"); *cf. Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff acknowledges that the ALJ noted Dr. Pinkowsky's finding that Plaintiff had intact sensation and 5/5 strength in September 2019 and complained of pain in October 2019, but points to the ALJ's failure to discuss Plaintiff's positive Spurling's test in October 2019. *Plaintiff's Brief*, ECF No. 17, p. 17 (citing R. 30 (citing R. 629 –30). According to Plaintiff, these findings "are significant abnormal objective evidence which supports the limitations found by Dr. Fusman." *Id*. However, Plaintiff does not explain how a positive Spurling's test

establishes that the ALJ's RFC determination failed to accommodate Plaintiff's shoulder impairment. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359; *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971));

Similarly, Plaintiff fails to explain how Dr. Pinkowsky's October 2019 discussion with Plaintiff about arthroscopic rotator cuff repair "further supports Dr. Fusman's finding limiting [Plaintiff] to occasional reaching of the left arm." *Plaintiff's Brief*, ECF No. 17, pp. 17–18 (citing R. 630). It is significant in this regard that Plaintiff makes no mention of Plaintiff's failure to seek "treatment for her neck or shoulder impairments after October 2019 until July 2020" when she went to see Dr. Balazs. R. 30; *see generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23. In short, Plaintiff has not persuaded this Court that this evidence undermines the ALJ's consideration of Dr. Fusman's opinion or otherwise requires remand.

Turning to the ALJ's reliance on Dr. Balazs' notes when discounting Dr. Fusman's opined reaching limitations, Plaintiff complains that this physician's strength findings are not necessarily inconsistent with Dr. Fusman's opinion. *Plaintiff's Brief*, ECF No. 17, p. 18 (citing R. 32 (citing R. 714–19)). Even assuming that Plaintiff is correct and that the ALJ erred to the extent that the ALJ equated strength with an ability to reach, Plaintiff has not established that this error is anything other than harmless. For example, Plaintiff does not argue that Dr. Balazs found that Plaintiff had a limitation in her range of motion in her left arm or shoulder. *See id*.

Plaintiff argues that Dr. Balazs' report that Plaintiff suffered from left shoulder pain for which he contemplated a repeat MRI of Plaintiff's left shoulder, combined with the evidence discussed above, "documents that [Plaintiff's] left shoulder impairment did not improve as the ALJ claimed. (Tr. 30)." *Plaintiff's Brief*, ECF No. 17, pp. 18–19. In fact, however, the ALJ did not find that Plaintiff's shoulder impairment had improved. R. 30. Instead, as detailed above, the ALJ stated, *inter alia*, that Dr. Balazs noted in July 2020 tenderness to palpation in Plaintiff's left shoulder and that an MRI of the left shoulder in August 2020 revealed a tear of the supraspinatus tendon and normal muscle strength in her upper extremities with no neurologic defects. *Id*. Absent some explanation from Plaintiff, it is not clear to the Court how this evidence establishes that the ALJ erred in discounting Dr. Fusman's opined limitations in Plaintiff's ability to reach.

For all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Fusman's opinion.

### B.   Past Relevant Work

Plaintiff next argues that the ALJ committed reversible error in finding that Plaintiff could perform her past relevant semi-skilled work as an office worker despite her mild mental

impairments. *Plaintiff's Brief*, ECF No. 17, pp. 20–26; *Plaintiff's Reply Brief*, ECF No. 23, pp. 7–9. For the reasons that follow, this Court disagrees.

As set forth above, the ALJ found at step two that Plaintiff's medically determinable mental impairments of anxiety disorder and depressive disorder were not severe. R. 23–25. In making this finding, the ALJ considered the requisite four broad areas of mental functioning, finding that Plaintiff had no limitation in her ability to interact with others and only "mild" or "mild, if any" limitations in the remaining three areas, reasoning as follows:

> As for the claimant's anxiety and depression, the undersigned notes that there is very little evidence of these impairments in the record. On May 7, 2019, the claimant denied having symptoms of depression (Exhibit B-5F/20). Upon exam, Dr. Pinkowsky noted that the claimant had a normal mood and affect. Dr. Balazs noted on July 13, 2020, that the claimant's mood and affect were normal (Exhibit B-14F/3). The claimant admitted that she just started seeing a therapist, and has only met with her twice. There is no evidence that the claimant takes any medication for her alleged anxiety and depression. There is also no evidence of any significant symptomatology such as memory deficits, mood fluctuations, hallucinations, or delusions. As there is no evidence that the claimant's alleged mental impairments have caused more than a minimal impact on her ability to perform work related activities, the undersigned concludes that they are non-severe impairments.
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. *In this area, the claimant has mild limitation*. The claimant testified that she has problems with her memory sometimes. The undersigned notes that the claimant did not have any problems understanding the questions that were presented to her during her hearing. The claimant admitted on an Adult Function Report that she has no problems following written and spoken instructions, and is able to finish what she starts (Exhibit B-4E). She noted that she can pay bills, count change, handle a savings account, and use a checkbook. The undersigned concludes that the claimant *has only mild, if any, limitation in understanding, remembering or applying information.*
>
> The next functional area is interacting with others. In this area, the claimant has *no limitation.* The claimant did not testify that she has any problems getting along with

others. The claimant indicated on an Adult Function Report that she does not have problems getting along with family, friends, or others (Exhibit B-4E). She admitted that she has never been fired from a job because of problems getting along with others. She noted that she spends times with others twice a week when her friend picks her up. None of the claimant's treatment notes document any problems getting along with the medical providers at these facilities. The undersigned concludes that the claimant *has no limitations interacting with others*.

The third functional area is concentrating, persisting or maintaining pace. In this area, the *claimant has mild limitation*. The claimant testified that she sometimes has problems with her concentration. The claimant admitted on an Adult Function Report that she has no problems following written and spoken instructions, has no problems paying attention, and is able to finish what she starts (Exhibit B-4E). The undersigned concludes *that the claimant has only mild, if any limitation in concentrating, persisting or maintaining pace.*

The fourth functional area is adapting or managing oneself. In this area, *the claimant has mild limitation*. The claimant indicated on an Adult Function Report that she can prepare simple meals, wash laundry, can drive a car, and shops in stores for groceries (Exhibit B-4E). The claimant did not testify that her alleged mental impairments cause any limitations in her ability to perform her activities of daily living. The undersigned concludes that *the claimant has only mild, if any limitations in adapting to managing oneself.*

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 24–25 (emphasis added).

Plaintiff argues that the ALJ, having found mild mental limitations at step two, erred by failing to both translate these findings into functional restrictions in the RFC finding and to explain in the RFC assessment why no related limitations were included. *Plaintiff's Brief*, ECF No. 17, pp. 20–26; *Plaintiff's Reply Brief*, ECF No. 23, pp. 7–9 (arguing, *inter alia*, that "it is

apparent that the reversible error here flowed from the ALJ's failure to give *any consideration* to her acknowledged mental impairments of anxiety and depression during the RFC assessment") (emphasis in the original). Plaintiff specifically complains that this error is not harmless because the ALJ focused on physical impairments in the RFC and did not address whether Plaintiff's mild mental impairments precluded her ability to perform her past relevant semi-skilled work as an office worker. *Id*. Plaintiff's arguments are not well taken.

The ALJ expressly considered these mild mental limitations when crafting Plaintiff's RFC:

> The limitations identified in the "paragraph B" criteria [at step two of the sequential evaluation] are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 19. Notably, at step four, the ALJ also specifically considered that Plaintiff "did not testify that her alleged mental impairments cause any limitations in her ability to perform her activities of daily living." R. 31 (noting further that Plaintiff stated that "she can prepare simple meals, wash laundry, can drive a car, and shops in stores for groceries");[7] *see also Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some ... mental concentration"); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484 (RBK), 2021 WL 1851830,

---

[7] To the extent that Plaintiff challenges this finding, the Court addresses this challenge later in this decision when analyzing the ALJ's consideration of Plaintiff's subjective complaints.

at *6 (D.N.J. May 10, 2021) ("Her ability to drive, prepare meals, manage funds, shop, and take

a cruise also contradicted her claims that she had difficulty concentrating, remembering

information, and engaging in social activities."). "This discussion and incorporation by reference

is sufficient to satisfy the requirement that the ALJ consider all of the Plaintiff's impairments in

formulating the RFC." *D.C.*, 2021 WL 1851830, at *5; *see also id.* at *6 ("[A]n RFC assessment

does not need to contain an in-depth analysis on mental impairments when the ALJ finds earlier

in his opinion that a claimant's mental impairments are no greater than mild"); *Gita P. v.*

*Comm'r of Soc. Sec. Admin.*, No. CV 21-6087 (MAS), 2022 WL 1683834, at *6 (D.N.J. May 26,

2022) (explaining that "[m]any courts in this District, however, have concluded that ALJs do not

err when giving short shrift to non-severe mental impairments in RFC determinations" and that

"the trend from these cases is clear: [the ALJ] did not reversibly err by relying on his thorough

step-two findings in crafting [the claimant's] RFC. In so affirming, the Court joins the chorus of

cases holding the same"); *Grice v. Saul*, No. CV 20-02804 (FLW), 2021 WL 4551357, at *8

(D.N.J. Oct. 5, 2021) (noting that the ALJ recognized that the step two analysis is separate and

distinct from the RFC assessment; that he included specific language that incorporated his step

two findings into the RFC; that he expressly stated that he considered all symptoms when

crafting the RFC; and that the plaintiff did not offer any opinions regarding, *inter alia*, her

mental RFC, and concluding that this discussion "demonstrates that the ALJ considered the

effects of all of Plaintiff's credibly-established and uncontradicted medical conditions in his RFC

assessment, including the mild mental limitations discussed during his step two analysis" and

that "[w]hile the ALJ did not discuss Plaintiff's mild mental limitations any further in his RFC

analysis, this is far from reversible error. Rather, it can be attributed to the ALJ's decision to

minimize discussion of conditions that 'do not cause more than minimal limitation in the

[Plaintiff's] ability to perform basic mental work activities'" and that "the ALJ's decision sufficiently considers how Plaintiff's mental impairments affect her RFC and her capability to perform past relevant work") (citations to the record omitted).[8]

In any event, even assuming for the sake of argument that the ALJ erred in her failure to more fully discuss Plaintiff's mild mental impairments at step four—and the Court is not persuaded that she did err in this regard—any such error is harmless. Plaintiff has not identified any specific limitations flowing from her mild mental impairments, nor has she identified any evidence supporting any such unidentified limitations that would prevent her from performing her past relevant semi-skilled work as an office worker. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23; *see also Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (stating that a harmless error review requires that the claimant explain how the error to which he points could have made any difference); *Simon v. O'Malley*, No. 1:23-CV-1363, 2024 WL 2303894, at *8 (M.D. Pa. May 21, 2024) ("Here, the record with respect to Simon's anxiety and depression is sparse. The records during the relevant time consistently document that Simon's anxiety and depression were well controlled with her medications, and there are no records indicating that Simon suffers from limitations that impair her ability to work due to these impairments. Accordingly, we conclude that any failure to include mild limitations

---

[8] In this regard, Plaintiff's reliance on *Rosario v. Kijakazi*, No. CV 21-15609, 2022 WL 2714010 (D.N.J. July 13, 2022), and *Kich v. Colvin*, 218 F. Supp.3d 342 (M.D. Pa. 2016) is misplaced. *Plaintiff's Brief*, ECF No. 17, pp. 22–25. In *Rosario*, the Court found insufficient the ALJ's "conclusory statement" that she considered all the claimant's medically determinable impairments when crafting the RFC. *Rosario*, 2022 WL 2714010, at *11. In *Kich*, the Court could not conclude that substantial evidence supported the RFC determination where, *inter alia*, "the ALJ essentially eliminated mental health related limitations without explanation[.]" *Kich*, 218 F. Supp.3d. at 357. In the present case, on the contrary, the ALJ adequately explained her consideration of Plaintiff's mild mental limitations when crafting the RFC. R. 24–25, 27, 31; *see also D.C.*, 2021 WL 1851830, at *5–6; *Gita P.*, 2022 WL 1683834, at *6; *Grice*, 2021 WL 4551357, at *8. *Rosario* and *Kich* are therefore inapposite.

from Simon's mental impairments is harmless."); *Hernandez v. Kijakazi*, No. CV 22-01556 (FLW), 2022 WL 17751355, at *8–10 (D.N.J. Dec. 19, 2022) ("Plaintiff takes issue with the ALJ's use of 'boilerplate language' here to explain the relationship between the step two analysis and the RFC analysis. . . . However, other courts in this Circuit have addressed nearly identical language in holding that the step four RFC analysis adequately reflected the ALJ's step two in-depth analysis of mental limitations. . . . [E]ven if the ALJ's consideration of Plaintiff's mild mental impairments was incomplete, any error was harmless. . . . The record contains sparse evidence pertaining to Plaintiff's depression and anxiety and any resulting work-related impairments.") (citations omitted); *D.C.*, 2021 WL 1851830, at *6 ("[T]he Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal."). Notably, the United States Court of Appeals for the Third Circuit has instructed that "the findings at steps two and three will not necessarily translate to the language used at steps four and five[,]" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019), and an ALJ need include only "credibly established" limitations in the RFC, *Rutherford*, 399 F.3d at 554. Accordingly, the Court cannot conclude that the ALJ committed reversible error when crafting Plaintiff's RFC, in light of the ALJ's consideration of the mild limitations flowing from Plaintiff's mental impairments and conclusion that Plaintiff can perform her past relevant semi-skilled work as an office worker. *Cf. Grice*, 2021 WL 4551357, at *8 n.2 ("The Court reiterates that the mental limitations at issue here were found to be mild, and that Plaintiff does not challenge the ALJ's classification of those limitations. Further, the Court notes that the ALJ's decision sufficiently considers how Plaintiff's

27

mental impairments affect her RFC and her capability to perform past relevant work.");

*Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656 (JBS), 2017 WL 3151243, at *6–7 (D.N.J.

July 24, 2017) ("Plaintiff has not offered any support for her position that someone with a mild

limitation in three broad functional areas . . . is incapable of performing a job rated with a skill

level of six, as her past relevant work as a bookkeeper is. . . . Because the ALJ need only include

credible limitations in the RFC, and because there is substantial evidence supporting the ALJ's

conclusion that Plaintiff's mental impairments would cause only mild limitations on her daily life

and not impact her work, the Court will not remand on this basis.").

In continuing to challenge the ALJ's finding that Plaintiff could perform her past relevant

work as an office worker, Plaintiff complains that the ALJ committed reversible error when she

failed to more fully discuss the physical requirements of that work. *Plaintiff's Brief*, ECF No. 17,

pp. 26–32.[9] As background, the ALJ concluded that Plaintiff's past relevant work as an office

worker did not require the performance of work-related activities precluded by her RFC:

> The claimant has past relevant work as an office worker (DOT 219.362-010). The
> vocational expert testified that such work is light and semiskilled SVP4 work, but
> was performed at both the sedentary exertional level. A review of the claimant's
> earning record indicates that the claimant worked as an office worker from 1993 to
> 2014, and from 2016 until 2018 (Exhibit B-3E). This work was thus clearly
> performed within the past fifteen years; and was of long enough duration to allow
> the claimant to fully learn all duties of the job. A review of the claimant's earnings
> queries reveals that the claimant's past work as an office worker was performed at
> or above the level of substantial gainful activity (Exhibit B-3D). Specifically, the
> claimant's earnings record shows that in 2005 through 2008, and in 2017 and 2018,
> the claimant earned at least $30,000 per year at her past work as an office helper.
> This income greatly exceeds the regulatory limits to constitute substantial gainful
> activity.

---

[9] To the extent that Plaintiff challenges the ALJ's purported failure to properly evaluate Dr.
Fusman's opinion, particularly the opined limitation of occasional reaching, that attack boils
down to an attack on the RFC determination, which the Court has already explained is supported
by substantial evidence.

Since this job was performed within the past fifteen years; was of long enough duration to allow the claimant to fully learn all duties of the job; and was performed at the level of substantial gainful activity, the undersigned finds it qualifies as past relevant work.

The vocational expert testified that although the Dictionary of Occupational Titles does not address an overhead reaching limitation, she was relying on her experience and knowledge as a vocational expert in the field in concluding that the position of an office worker can be performed with a limitation of occasional overhead reaching with the left, non-dominant upper extremity. The undersigned finds that the vocational expert has provided a reasonable explanation for how her testimony differs from the Dictionary of Occupational Titles.

The undersigned finds, after a review of the evidence and a comparison between the claimant's residual functional capacity and the physical and mental demands of her past relevant work as an office worker, that the claimant is able to perform this work as actually performed.

R. 33.

Plaintiff complains that the ALJ made only cursory findings regarding Plaintiff's past work and that, although the ALJ relied on the vocational expert's testimony, that testimony is unclear because the vocational expert testified that Plaintiff performed her past work at both the sedentary and light levels. *Plaintiff's Brief*, ECF No. 17, pp. 30–31. The ALJ's error in failing to discuss the requirements for Plaintiff's past work is not harmless, Plaintiff contends, because the Grids would direct a finding of disability if Plaintiff—aged 52 at the time of her alleged disability onset date, with a high school education and no transferable skills—were limited to sedentary work. *Id*. at 31–32 (citing Grid Rule 201.14).

The Court is not persuaded that this issue requires remand. The ALJ expressly asked Plaintiff about the physical requirements for her past relevant work as an office worker. R. 45–47. Plaintiff denied that she was required to lift or carry anything at her most recent job and agreed that she was seated most of the day, using a computer or telephone. *Id*.  The

work that she performed prior to that job also involved clerical work and lifting 10 to 20 pounds. R. 45–47. The vocational expert was present during Plaintiff's testimony and had access to Plaintiff's work history reports, *see* R. 129, but indicated that she needed no additional vocational information. R. 58–59. In her testimony, the vocational expert classified and described Plaintiff's past relevant work as "an office worker, [DICOT] 219.362-010. That is an SVP [specific vocational preparation] of 4, light per DOT [Dictionary of Occupational Titles], however, performed both at the sedentary and light level." *Id*. The ALJ asked the vocational expert to assume a hypothetical individual with the RFC ultimately found by the ALJ and asked whether this hypothetical individual could perform Plaintiff's past work, and the following exchange occurred between the vocational expert and the ALJ:

A    Yes, they could perform her job as an office worker, performed at the sedentary level.

Q    So as she performed it?

A    Yes, that's correct.

Q    Okay. And this hypothetical was for occasional reaching. All other reaching with the left upper extremity, would that exclude that work?

A    It would.

Q    Okay. And is your testimony consistent with the DOT?

A    It is.

Q    Okay. Is reaching specified in the DOT?

A    It is not.

Q    Okay.

A    For that, I based that on my 30 years of education, training and work experience as a vocational counselor.

30

R. 59–60. This testimony reflects that the ALJ sufficiently developed the testimony of Plaintiff and the vocational expert to classify and describe Plaintiff's past relevant work and the abilities necessary to perform it, which are reflected in the RFC.

Plaintiff, however, insists that the ALJ's finding that Plaintiff can perform her past relevant work is unclear because the ALJ "omitted the reference that this job was also performed at the light level." *Plaintiff's Brief*, ECF No. 17, p. 31. Plaintiff's argument is not well taken. A fair reading of the relevant hearing testimony above and the ALJ's decision reflects that the ALJ adopted the vocational expert's testimony that an individual with the same hypothetical limitations ultimately included in the RFC could perform Plaintiff's past relevant work as an office helper *as it was actually performed at the sedentary level*. R. 33, 59–60. As detailed above, the ALJ explained that the vocational expert relied on her experience and knowledge in the field when that expert testified that this past relevant work could be performed with a limitation to occasional overhead reaching. R. 33.

In short, substantial evidence supports the ALJ's finding that Plaintiff had the mental and physical abilities to perform her past relevant work as an office worker as she actually performed that work at the sedentary level.

### C.   Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that medical evidence supports these complaints and that the ALJ erred in failing to invoke contrary medical evidence sufficient to discount Plaintiff's complaints. *Plaintiff's Brief*, ECF No. 17, pp. 32–36; *Plaintiff's Reply Brief*, ECF No. 23, pp. 9–10. For the reasons that follow, Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 28. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 28. As previously noted, the ALJ detailed years of medical evidence and record testimony to support her findings, including large gaps in Plaintiff's treatment records regarding her cardiac care, foot impairment, and neck and shoulder impairments; the fact that she required any type of assistive device to ambulate; the lack of evidence of sensory, reflex loss, and decreased strength in her lower extremities; the finding of full range of motion in her left shoulder in June 2019 and findings of normal motor strength in her upper extremities with no focal neurologic deficits and no sensory loss or reflex loss; Plaintiff's activities of daily living that included preparing simple meals, doing laundry, driving a car, and grocery shopping; and no evidence that Plaintiff's alleged mental impairments caused any limitation in her ability to perform her activities of daily living. R. 28–32. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as

inconsistent with the record evidence. *See Miller*, 719 F. App'x at 134; *Hoyman v. Colvin*, 606 F.

App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence

regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's]

credibility."); *Izzo*, 186 F. App'x at 286; *Van Horn*, 717 F.2d at 873; *Davis v. Saul*, No. CV 18-

4288, 2019 WL 2525447, at *5 (E.D. Pa. June 18, 2019) ("Contrary to Plaintiff's assertion, it was

not improper for the ALJ to consider evidence of gaps in treatment when assessing the limiting

effects of Plaintiff's impairments. The ALJ reasonably considered this evidence because

treatment history is a relevant factor in evaluating the intensity, persistence, and limiting effects

of Plaintiff's subjective complaints."); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6

(D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'").

Plaintiff nevertheless points to evidence that she believes supports her subjective

statements and undermines the ALJ's decision to discount such statements. *Plaintiff's Brief*, ECF

No. 17, pp. 34–35 (citations omitted). Plaintiff specifically complains that the ALJ overstated her

daily activities and did not consider "caveats and qualifications[,]" as follows:

> (1) she is unable to take her dog to the park and so her friends do it for her; (2) her
> arthritis sometimes interferes with her sleep; (3) she stays in bed and does not get
> dressed or bathe if her pain is bad (Tr. 181); (4) she sometimes needs help or
> reminders to take medications; (5) previously she cooked all the time but now this
> activity was limited; (6) she does not clean or do yard work, only laundry and she
> sometimes needs help with the activity (Tr. 182); and (7) she does not handle stress
> well and becomes very anxious. (Tr. 186).

*Id*. The Court is not persuaded that this evidence undermines the ALJ's finding that Plaintiff was

able to "prepare simple meals, wash laundry, can drive a car, and shops in stores for groceries."

R. 31. Most of the evidence referred to by Plaintiff is unrelated to these activities and her

testimony that her cooking is now "limited" and that "she sometimes needs help with" doing

laundry is notably vague. In any event, the Court "will uphold the ALJ's decision even if there is

34

contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201 (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson*, 402 U.S. at 399).

Plaintiff also argues that the ALJ erred in asserting that Plaintiff did not testify that her alleged mental impairments caused any limitation in her ability to perform activities of daily living. *Plaintiff's Brief*, ECF No. 17, p. 35. Plaintiff specifically alleges that she testified that she "has difficulties with both anxiety and depression, and prior to the administrative hearing she started seeing a therapist for these problems. (Tr. 51). She is constantly beset by worries and there are times during the day when she has problems maintaining attention/concentration or memory. (Tr. 54)." *Id*. Plaintiff asserts that this testimony "conveyed that her mental impairments were interfering with her daily life." *Id*.

Plaintiff's argument is not well taken. While it is true that Plaintiff testified that she had begun therapy for her anxiety and depression, R. 51, a fair reading of her testimony reflects that Plaintiff did not testify that her mental impairments caused "problems maintaining attention/concentration or memory":

> Q Okay. Let's go on to some -- are there any other reasons besides your back that you don't feel you could go back to your jobs?
>
> A Just arthritis basically, I mean it's like all through my body, and that causes pain also. And then I worry about my heart too.
>
> Q Do you have -- and what are the symptoms that your heart condition gives you that would affect your duties that you had at your job?

A Well, I've already said, like if I'm driving and I get chest pain or something, you know, I worry about if I'm having another heart attack. I mean I have had three heart attacks already.

Q Yeah. And could you lift files right now?

A No.

Q Do you have any problems maintaining attention and concentration or problems with your memory?

A *There are times, yes*.

R. 54 (emphasis added). The Court is not persuaded that this vague and unspecific testimony establishes that her mental impairments caused problems with her ability to maintain attention and concentration or with her memory. *See id*. As previously explained, the Court must include in the RFC only "credibly established" limitations. *See Pierznik*, 2023 WL 4014468, at *1; *Anderson*, 2022 WL 1635628, at *4; *Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554 (3d Cir. 2005). This Court concludes that the ALJ did not err in declining to include in Plaintiff's RFC limitations arising from undefined "problems" experienced by Plaintiff at "times."

Finally, to the extent that Plaintiff argues in reply that the ALJ did not invoke sufficient "contrary medical evidence" to discount Plaintiff's complaints in accordance with the relevant standard, *Plaintiff's Reply Brief*, ECF No. 23, pp. 9–10, this Court has already explained why substantial record evidence supports the ALJ's consideration of Plaintiff's subjective complaints.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and that the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony

regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

**D.     Request for Remand Under Sentence Six**

Finally, Plaintiff seeks remand of the action pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of alleged new and material evidence. *Plaintiff's Brief*, ECF No. 17, pp. 25–27; *Plaintiff's Reply Brief*, ECF No. 23, pp. 11–14. For the reasons that follow, Plaintiff's request is not well taken.

It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Id.* at 593; *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that a court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Evidence is "new" if it is "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 834 (3d Cir. 1984) (citations omitted). "To be material, there 'must be a reasonable probability that the new

evidence would have changed the outcome' of the Commissioner's decision." *Miller v. Comm'r Soc. Sec.,* 732 F. App'x 162, 165–66 (3d Cir. 2018) (quoting *Beety-Monticelli v. Comm'r of Soc. Sec.,* 343 F. App'x 743, 747 (3d Cir. 2009) and *Szubak*, 745 F.2d at 833). Finally, a finding of "good cause" "requires 'some justification for the failure to acquire and present such evidence to the [Commissioner].'" *Szubak*, 745 F.2d at 833 (quoting *Brown v. Schweiker*, 557 F. Supp. 190, 192 (M.D. Fla. 1983)).

In the case presently before the Court, Plaintiff cites to therapy notes from Pooja Tandon, M.D., and neurology records from Vinod Kapoor, M.D., as the basis for her request to remand pursuant to sentence six of the statute. *See Plaintiff's Brief*, ECF No. 17, pp. 25−27, and exhibits attached thereto; *Plaintiff's Reply Brief*, ECF No. 23, pp. 11–14.

### 1.     Dr. Tandon's therapy notes

Dr. Tandon's therapy notes reflect treatment sessions on December 4, 2020, and December 23, 2020, *Plaintiff's Brief*, ECF No. 17, p. 36, and Exhibit 1, attached thereto as ECF No. 17-1 (containing Dr. Tandon's notes), *i.e.,* sessions that occurred before the ALJ rendered her decision on December 31, 2020. *See id*. Plaintiff has not alleged, nor has she otherwise explained, why she did not provide those notes to the ALJ. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23. At a minimum, Plaintiff has not explained why she did not ask the ALJ to keep the record open for any such evidence. Accordingly, this Court concludes that Dr. Tandon's therapy notes are not new. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (explaining that evidence is "new" if the evidence is "not in existence or available to the claimant at the time of the administrative proceeding"); *Boucher v. Kijakazi*, No. CV 20-1341, 2022 WL 3920933, at *1 (W.D. Pa. Aug. 31, 2022) (finding that records were not "new" even though they were not part of the record considered by the ALJ because "they clearly existed

38

at the time of the administrative hearing, and Plaintiff has offered no explanation as to why they were not presented to the ALJ at that time").

Moreover, the Court is not persuaded that this evidence is material. Plaintiff argues that the evidence shows that Plaintiff was taking Zoloft, which would have made a difference to the ALJ who found at step two that there was no evidence that Plaintiff took medication for her anxiety and depression. *Plaintiff's Brief*, ECF No. 17, p. 37 (citing R. 24). Plaintiff also contends that the new evidence documents symptoms of "depressed mood, excessive worry, insomnia, irritability, nervous/anxious behavior, palpitations and restlessness," which is contrary to the ALJ's finding that the record failed to document "any significant symptomatology". *Id*. (citing R. 24) (citing Exhibit 1, ECF No 17-1, p. 3); *see also Plaintiff's Reply Brief*, ECF No. 23, p. 12. However, the ALJ's observation that there was no evidence that Plaintiff took any medication for her anxiety and depression was but one factor that the ALJ noted at step two. R. 24. Plaintiff has not explained, and it is not apparent to the Court, how taking this medication would alter any of the ALJ's specific findings at step when the ALJ concluded that Plaintiff had no, or at most mild, limitations in the four broad areas of mental functioning. *See Plaintiff's Brief*, ECF No. 17, p. 37; R. 24–25. Although Plaintiff also refers to the mention of symptoms in Dr. Tandon's notes, that mention appears to refer only to Plaintiff's subjective reports to Dr. Tandon. *See* Exhibit 1, ECF No 17-1, p. 3 (list of symptoms under the heading "Subjective" and under the sub-headings of "Anxiety" and "Depression"). However, the mere memorialization of a claimant's subjective complaints in a medical record will not serve to transform those complaints into objective findings or medical opinion. *Hatton*, 131 F. App'x at 879 ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996));

*Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Even if these symptoms were found by Dr. Tandon, it is significant that Plaintiff also reported to Dr. Tandon that she "is feeling a little better."  Exhibit 1, ECF No 17-1, p. 3. Moreover, Plaintiff's assertion that these mental symptoms would impact the ALJ's finding that there was no significant symptomatology is not well taken. The ALJ specifically explained that functional limitations arising from symptomatology would be "memory deficits, mood fluctuations, hallucinations, or delusions." R. 24. As previously explained, Plaintiff has not shown that she had any functional limitations flowing from her depression or anxiety. Accordingly, the Court cannot conclude that Dr. Tandon's therapy records are material for purposes of a sentence six remand.

Finally, and in any event, Plaintiff has not shown "good cause" for failing to present this evidence to the ALJ. *See Miller,* 732 F. App'x at 165–66. Plaintiff argues for the first time in reply that good cause exists because she "was not represented by an attorney but a non-attorney representative until the ALJ issued her December 31, 2020 decision" and did not secure her present counsel until February 24, 2021. *Plaintiff's Reply Brief*, ECF No. 23, p. 13. Plaintiff argues that the "change in counsel provides the requisite good cause." *Id*. (citing *Digiovanni v. Apfel*, No. 97-245-Civ-FTM-21D, 1999 WL 33601325 (M.D. Fla. Feb. 8, 1999)). Plaintiff's argument is not well taken. Although a non-attorney apparently represented Plaintiff through some of the administrative proceedings, an attorney, Edward Rao, appeared on Plaintiff's behalf

at the administrative hearing on November 12, 2020. R. 20, 38–63; *see also* R. 240 (reflecting a notice of updated contact number for Attorney Edward Rao dated November 3, 2020). Attorney Rao asked the ALJ to hold the record open so that he could obtain and submit additional records, a request that the ALJ granted. R. 42–43, 62. There is no evidence that Attorney Rao asked the ALJ to continue to hold open the record so that counsel could obtain and submit the evidence from Dr. Tandon. Based on this record, the Court cannot conclude that Plaintiff has established good cause for her failure to submit this evidence from Dr. Tandon to the ALJ. *See Szubak*, 745 F.2d at 834; *Matos v. Kijakazi*, No. CV 21-02024 (FLW), 2022 WL 1134995, at *8 (D.N.J. Apr. 18, 2022) ("Ultimately, Plaintiff's good cause argument appears to boil down to either that current counsel disagrees with prior counsel's legal strategy to not obtain Dr. Paris's report, or that prior counsel was somehow negligent. Neither reason is adequate justification for submitting new evidence, and, in turn, is not good cause.").

### 2.    Dr. Kapoor's neurology records

Plaintiff also submits neurology records from Dr. Kapoor dated February 10 and 21, 2021. Exhibit 2 attached to *Plaintiff's Brief*, ECF No. 17-2. The Commissioner does not dispute that this evidence is new. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 27. However, the parties disagree whether this information is material. Plaintiff argues that this information indicates that: (1) Plaintiff "reported a nine-month history of numbness and pain in the feet, used a cane to ambulate and felt off-balance. Exhibit 2"; (2) Dr. Kapoor reviewed a July 20, 2020, X-ray of the lumbar spine and an October 30, 2020, MRI of the lumbar spine; (3) Dr. Kapoor performed an EMG/NCV study on February 10, 2021, and diagnosed sensory peripheral neuropathy at the left sural nerve (left calf) and polyneuropathy; and (4) "[t]he only treatment that Dr. Kapoor was able to provide was Gabapentin 300 mg twice a day." *Plaintiff's Brief*, ECF

No. 17, p. 38; *see also Plaintiff's Reply Brief*, ECF No. 23, pp. 12–13. Plaintiff contends that this evidence contradicts the ALJ's finding that there was no evidence that Plaintiff lacked the ability to perform fine or gross movements with her upper extremities and the ALJ's finding of no abnormal examination findings. *Plaintiff's Brief*, ECF No. 17, p. 38 (citing R. 30); *see also Plaintiff's Reply Brief*, ECF No. 23, p. 13. According to Plaintiff, "[t]his evidence may well have made a difference had it been reviewed by the ALJ. At the very least, the evidence in combination creates a reasonable probability that it would change the administrative result." *Plaintiff's Brief*, ECF No. 17, p. 38 (citing R. 30); *see also Plaintiff's Reply Brief*, ECF No. 23, p. 13.

For his part, the Commissioner argues that this evidence, dated two months after the ALJ's decision, is not material because, although EMG testing showed sensory peripheral neuropathy of the left sural nerve, the report also recommended clinical correlation. *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 20, p. 27 (citing Exhibit 2, ECF No. 17-2, pp. 8–10). The Commissioner also emphasizes that this examination showed that Plaintiff had normal strength in all muscle groups, normal range of motion in all joints, equal 2/4 deep tendon reflexes, and no focal deficits. *Id*. (citing Exhibit 2, ECF No. 17-2, pp. 8–10). The Commissioner therefore contends that these essentially normal findings would not change the outcome of the Commissioner's decision and are therefore not material. *Id*.

The Court is not persuaded that Dr. Kapoor's records contain "material" evidence. As previously noted, evidence is "material" if there is "a reasonable probability that the new evidence would have changed the outcome of the Commissioner's decision." *Miller,* 732 F. App'x at 165–66 (internal quotation marks and citations omitted). Even assuming that Dr. Kapoor's records relate to the relevant time period, Plaintiff has not persuaded the Court that this

evidence would present a reasonable probability of changing the Commissioner's decision. Dr. Kapoor's diagnoses of sensory peripheral neuropathy at the left sural nerve (left calf) and polyneuropathy are simply that: diagnoses. "A diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, as the Commissioner highlighted, Dr. Kapoor recommended clinical correlation and while his examinations revealed back pain, poor balance, and numbness, Plaintiff also had, *inter alia*, normal strength in all muscle groups, normal range of motion in all joints, equal 2/4 deep tendon reflexes, and no focal deficits. Exhibit 2, ECF No. 17-2, pp. 3–4 (noting further, *inter alia*, grossly normal psychiatric findings), 8–11. Notably, Plaintiff has simply described this evidence, and has not offered any explanation as to why it "may well have made a difference" in the ALJ's decision. *Plaintiff's Brief*, ECF No. 17, p. 38; *see also Plaintiff's Reply Brief*, ECF No. 23, p. 13.

Accordingly, for all these reasons, Plaintiff's request for remand pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence is not well taken.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  August 12, 2024                               *s/Norah McCann King*
                                                      NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE

43